IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RALPH HARRISON BENNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:19-CV-248 (MTT) |
| ) | |
| GEORGIA DEP'T OF CORR., *et al*., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### ORDER

Plaintiff Ralph Benning, an inmate at Augusta State Medical Prison ("ASMP"), moves for additional discovery to support his claim that the defendants are violating the Religious Land Use and Institutionalized Persons Act ("RLUIPA") pursuant to Federal Rule of Civil Procedure 56(d). Doc. 94. For the reasons stated, the defendants are **ORDERED** to respond by **May 16, 2024**, and state whether they intend to rely on their argument that the ASMP kitchen is kosher.

### I. BACKGROUND

On June 20, 2019, Benning, who was incarcerated at Wilcox State Prison ("WSP"), filed a complaint alleging the defendants were not providing him with kosher meals, which substantially burdened his religious beliefs and violated RLUIPA. Docs. 1 at 11; 23 at 5. Benning requested "that the defendants provide [him] with kosher food that meets the dietary requirements of [his] Jewish faith." Docs. 1 at 12; 23 at 6. On October 21, 2021, the parties jointly moved to dismiss Benning's claims after entering into a private settlement agreement ("PSA") pursuant to 18 U.S.C. § 3626(c)(2)(A). Doc. 52. The PSA provides that the Georgia Department of Corrections would provide

Benning with kosher meals, the kosher pre-packaged meals would be double sealed, and that the meals would be "comparable in nutritional value and caloric intake to the current restricted alternative meal plan."  Doc. 52-1 ¶¶ 2, 5-6.  The Court granted the joint motion and dismissed the case with prejudice "subject to the Court's retention of jurisdiction, pursuant to 18 U.S.C. § 3626(c)(2), for the purpose of reinstatement upon Plaintiff's motion."  Doc. 53.

Benning moved to reinstate the action, citing violations of two portions of the PSA and his alleged attempts to address the violations with the defendants without success.  Docs. 55; 59.  Specifically, Benning's motion argued that the defendants failed to abide by "clauses 5 and 6 [of the PSA] concerning the sealing of the meals and the nutritional value and caloric intake of the diet" because the kosher meals offered by the defendants do not contain enough calories and are often not packaged correctly.  Docs. 55 at 2; 57 at 2-3.  While the food may have been kosher "[a]t some point in time," according to Benning, the broken seals invalidated the kosher certification "and, the food [was] not kosher."  Doc. 59 at 4.  Thus, Benning was again alleging that the prison staff at WSP failed to provide him with kosher food, which substantially burdened his religious beliefs and violated RLUIPA.  *Id*.  Because Benning stated a violation of a federal right, the Court granted Benning's motion to reinstate the action.  Doc. 60.

After the close of discovery, the defendants moved for summary judgment on Benning's RLUIPA claim.  Doc. 62.  The defendants explained that inmates are provided kosher meals through the Alternative Entrée Program ("AEP") production kitchen in Milledgeville, Georgia.  Doc. 62-2 ¶ 1.  The AEP production kitchen assembles and distributes both frozen and fresh meals.  *Id*. ¶ 10.  The frozen meals are

placed in food trays that "are sealed on top with plastic" and then "placed in a second sealing machine that seals the entire tray in a plastic envelope."  *Id*. ¶¶ 15-16.  Fresh items, such as sandwiches, are typically "assembled and packaged at the [AEP] production kitchen and then shipped" to the prison facilities, although there was a "period when AEP sandwiches were being made" at WSP in a kosher kitchen.  *Id*. ¶¶ 10, 34-35.  The defendants argued that the meals were properly double sealed; but even if they were not double sealed, the kosher certification on the meals was not compromised because the meals "are heated in separate ovens in the vegan room," which complied with kosher requirements.  Doc. 62-1 at 5-7.  Additionally, the defendants contended that portion sizes were monitored by prison staff to ensure proper nutrition.  Doc. 62-2 ¶ 11.  The defendants produced affidavits and other evidence to support their allegations that Benning's meals at WSP contained sufficient calories and complied with his religious requirements.  *E.g.*, Docs. 62-3; 62-8; 62-9; 62-10; 62-14; 62-15; 62-16; 62-17; 62-18; 62-19; 62-20; 62-21; 62-22; 62-23; 62-24; 62-25.

On January 19, 2024, Benning filed his response arguing that: (1) the plastic trays and seals on the frozen AEP meals are not kosher; (2) even if the trays and seals were kosher, the seals are often broken; (3) the AEP kitchen is not kosher and so when the seals are broken the food is exposed to a non-kosher environment, which invalidates the kosher certification; (4) the sandwiches and other fresh items prepared at WSP were prepared using non-kosher ingredients and tools; and (5) "based on [his] measurements," dozens of food items were not properly portioned and he was not receiving sufficiently calories.  *See generally* Docs. 66-2; 66-18; 66-22.  Regarding the seals on the AEP frozen meals, Benning argued that condensation *between* the first

and second seals was evidence that *both* seals were compromised and, thus, the kosher certification on the meals was invalid. Doc. 66-22 at 11 ("The presence of condensation with high density nucleation in a heated and supposedly static closed system is evidence that the system, *the area between the alleged seals*, is not closed and is not static.") (emphasis added).

In response, the defendants produced evidence that: (1) the seals and trays were certified kosher (Doc. 71-4 at 2); (2) condensation between the seals was not evidence that the *second* seal was broken (Doc. 71-5 ¶ 10); (3) that a rabbi traveled to WSP to re-kosher items in the kitchen (*id*. ¶ 9); and (4) that Benning had not lost weight or experienced any other medical issues while receiving AEP meals, supporting the defendants' assertion that Benning was fed nutritionally adequate meals (Docs. 71-6 at 4; 71-7 at 2).[1]

On February 20, 2024, Benning was transferred from WSP to ASMP. Doc. 78 at 2. As a result, the defendants filed a supplemental brief addressing the effect of Benning's transfer on his claims and a supplemental statement of undisputed facts "regarding the kosher-certified meals provided" to Benning at ASMP. Docs. 78 at 1; 78-1. The defendants argued that even if the double seal on the frozen AEP meals was compromised, the meals were stored and reheated in a kosher kitchen at ASMP to maintain their kosher certification. Doc. 97 at 7; *see*, *e.g.*, Docs. 78-1; 78-2; 78-3; 78-4;

---

[1] Benning subsequently filed a "motion for referral of HIPPA violations" (Doc. 85) and a "motion to strike" (Doc. 86) the defendants' Exhibit H (Doc. 71-6), which contains Benning's height and weight at various times between August 31, 2023, and January 31, 2024. Benning put his medical care at issue when he alleged that the meals the defendants provide are not nutritionally adequate. *See, e.g.*, Docs. 55 at 2; 57 at 2-3; 66-22 at 12-13. Thus, Benning cannot now complain that the defendants have proffered evidence about his height and weight to combat his allegations of malnutrition. Accordingly, Benning's motions (Docs. 85; 86) are **DENIED**.

78-5; 78-6; 78-7; 78-8; 78-9; 78-10; 78-11.  Additionally, the defendants asserted that although sandwiches were "currently being assembled" at ASMP, the defendants planned to have all sandwiches "assembled and packaged in the AEP food production kitchen and shipped to ASMP."  Doc. 78-1 ¶ 57.

In response, Benning filed a motion for limited discovery pursuant to Rule 56(d).  Doc. 94.  Benning requests additional discovery to "provide evidence of the use of items and equipment in the AEP areas which are not kosher" and respond to the defendants' arguments.  Doc. 94-1 ¶ 3.  Specifically, Benning requests:

> (1) Entry into the food service department at ASMP to:
>
>> (a) Inspect the physical layout of the kitchen at ASMP;
>> (b) Inspect the Alternative Entrée Program (AEP) location and area with respect to non-AEP equipment items and foods;
>> (c) Inspect the AEP food storage areas;
>> (d) Inspect the AEP areas and equipment;
>> (e) Inspect [the] operation of the AEP equipment when in operation, rethermalization and holding; and
>> (f) Inspect the operations and procedures used from the removal of a frozen meal from the AEP food storage area to the rethermalization and holding of the meal for service and the service of the meal. Included is inspecting the operations and procedures used for the preparation of sandwiches.
>
> (2) The production of the Standard Operation Procedures, instructions, directives, memoranda, menus, manuals detailing the procedures and operations to be used by ASMP staff and offenders as applicable for the provision of AEP meals to Plaintiff.

*Id*.  Benning also requests that he be permitted to ask defense counsel questions during the entry and inspection of the ASMP food facilities.  *Id*. at 2.  The defendants oppose Benning's request—contending it is unnecessary and unduly burdensome.  Doc. 97.  Specifically, the defendants provide evidence that beginning on or about the end of

-5-

February 2024,[2] all sandwiches were assembled and shipped from the AEP production kitchen in Milledgeville.  Doc. 97-1 ¶ 7.  Thus, discovery about the procedures used at the ASMP kitchen is unnecessary, according to the defendants, because Benning "receives the same meals from the AEP production kitchen containing a kosher certification whether at [WSP] or ASMP."  Doc. 97 at 3.

## II. DISCUSSION

Benning asserts that he cannot respond to the defendants' argument that food in the ASMP kitchen is prepared in a kosher manner without additional discovery.  Doc. 94.  The defendants contend that because all kosher meals, fresh and frozen, are prepared at the AEP production kitchen in Milledgeville and because all meals are double sealed to prevent contamination with non-kosher environments, the procedures used to prepare food in the ASMP kitchen are irrelevant.  Doc. 97 at 3.   However, the defendants also argue that the failure to double seal meals would not invalidate any kosher certification because the ASMP kitchen is kosher.  *Id*. at 7; s*ee also* Docs. 78-1; 78-2; 78-3; 78-4; 78-5; 78-6; 78-7; 78-8; 78-9; 78-10; 78-11.

If the defendants continue to argue in this action that the ASMP kitchen is kosher, then the defendants have put the kosher certification of the ASMP kitchen in dispute and Benning is entitled to limited discovery to refute their assertion.  However, if the defendants do not intend to argue that the ASMP is kosher, then the kosher certification of the ASMP kitchen is irrelevant and inspection would be unnecessary.

---

[2] The defendants submit an affidavit from the Food Services Director at ASMP who testified that "[b]eginning on February 30, 2024, ASMP began receiving packaged sandwiches from the AEP food kitchen in Milledgeville" and "[n]o sandwiches have been prepared at ASMP since February 30, 2024."  Doc. 97-1 ¶ 7.  February 30, 2024 does not exist and, thus, this date was obviously a clerical error.

-6-

Accordingly, the defendants are **ORDERED** to respond by **May 16, 2024**, and state whether they intend to rely on their argument that the ASMP kitchen is kosher.

## IV. CONCLUSION

The defendants are **ORDERED** to respond by **May 16, 2024**, and state whether they intend to rely on their argument that the ASMP kitchen is kosher.  Furthermore, Benning's motion for referral of HIPPA violations (Doc. 85) and motion to strike (Doc. 86) are **DENIED**.

**SO ORDERED**, this 14th day of May, 2024.

S/ Marc T. Treadwell  
MARC T. TREADWELL, CHIEF JUDGE  
UNITED STATES DISTRICT COURT